UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RETO LACINA,

      Plaintiff,

v.                                                                                          Case No: 8:14-cv-2797-T-30JSS

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

### REPORT AND RECOMMENDATION

      Plaintiff, Reto Lacina, on behalf of his deceased wife, Lori Lacina[1] ("Claimant"), seeks judicial review of the denial of Claimant's claim for a period of disability, disability insurance benefits, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Court recommends that the decision be affirmed.

### BACKGROUND

**A.  Procedural Background**

      Claimant filed an application for a period of disability, disability insurance benefits, and supplemental security income on February 11, 2011. (Tr. 20.) The Commissioner denied Claimant's claims both initially and upon reconsideration. (Tr. 20.) Claimant then requested an administrative hearing. (Tr. 20.) Upon Claimant's request, the ALJ held a hearing at which Claimant appeared and testified. (Tr. 20.) Following the hearing, the ALJ issued an unfavorable decision finding Claimant not disabled and accordingly denied Claimant's claims for benefits. (Tr.

---

[1] Ms. Lacina passed away due to cancer on September 6, 2015, during the pendency of this case. (Dkt. 21.)

17–31.)  Subsequently, Claimant requested review from the Appeals Council, which the Appeals

Council denied.  (Tr. 1–3, 14–16.)  Claimant then timely filed a complaint with this Court.  (Dkt.

1.)  The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B.  Factual Background and the ALJ's Decision**

Claimant, who was born in 1970, claimed disability beginning on April 30, 2010.  (Tr. 20,

30.)  Claimant has an eleventh-grade education.  (Tr. 30, 192.)  Claimant's past relevant work

experience includes work as a deli worker and department manager.  (Tr. 29.)  Claimant alleged

disability due to mental illness, right hip pain, left leg pain, and migraines, as well as lower back

pain.  (Tr. 192, 25.)

In rendering the decision, the ALJ concluded that Claimant had not performed substantial

gainful activity since April 30, 2010, the alleged onset date.  (Tr. 22.)  After conducting a hearing

and reviewing the evidence of record, the ALJ determined that Claimant had the following severe

impairments: status post very remote right hip repair in 1997; status post remote left tibia/fibula

fracture in 2001; and bipolar disorder with depression and anxiety/panic disorder with drug and

alcohol abuse.  (Tr. 22.)  Notwithstanding the noted impairments, the ALJ determined that

Claimant did not have an impairment or combination of impairments that met or medically equaled

one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 23.)  The ALJ

then concluded that Claimant retained a residual functional capacity ("RFC") to perform light work

with the following limitations: occasional operation of foot controls bilaterally; avoid concentrated

exposure to vibrations affecting the lower extremities; occasional climbing ramps and stairs,

balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffolds

or at unprotected heights; limited to understanding, remembering, and carrying out simple, routine,

and repetitive instructions and procedures, with the ability to adjust to simple changes in work

setting, and to make basic decisions; and limited to frequent interaction with the public but only occasionally with crowds and never with large crowds.  (Tr. 24.)  In formulating Claimant's RFC, the ALJ considered Claimant's subjective complaints and determined that, although Claimant's medically determinable impairments could reasonably be expected to cause some of the symptoms alleged, Claimant's statements as to the intensity, persistence, and limiting effects of her symptoms were not fully credible.  (Tr. 25.)

Considering Claimant's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Claimant could perform her past relevant work as a deli worker.  (Tr. 29.)  Given Claimant's background and RFC, the VE testified that Claimant could perform other jobs existing in significant numbers in the national economy, such as cashier, office mail clerk, and office helper.  (Tr. 30–31.)  Accordingly, based on Claimant's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Claimant not disabled.  (Tr. 31.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an

individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a).  Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing

court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ and Appeals Council failed to consider additional evidence; (2) the ALJ failed to properly evaluate Claimant's impairments; (3) the ALJ failed to find that a listed impairment was met; (4) the ALJ failed to properly formulate Claimant's RFC; (5) the ALJ failed to pose a complete hypothetical question to the vocational expert; (6) the ALJ failed to properly weigh medical opinions; and (7) the ALJ failed to assess Claimant's pain under the pain standard. For the reasons that follow, none of these contentions warrants reversal.

### A. Additional Evidence

#### 1. ALJ's Failure to Review Additional Evidence

Plaintiff argues that the ALJ erred by failing to keep Claimant's record open after informing Claimant that he would do so to obtain a report of an x-ray of her lower back. Consequently, Plaintiff argues that the ALJ erred by failing to consider the x-ray before issuing his decision. Plaintiff further argues that the Appeals Council failed to consider this evidence.

In this case, the ALJ held a hearing on February 6, 2013. (Tr. 20.) During the hearing, Claimant testified that her right hip repair in 1997 resulted in pain to her lower back. (Tr. 49–50.) When asked if she had any x-rays or MRI of the low back, Claimant testified that an x-ray was taken a few months prior and offered to provide the ALJ with the records of the x-ray. (Tr. 50.)

The ALJ then agreed to leave the record open for thirty days for Claimant's attorney to submit the x-ray records of Claimant's lumbar spine.   (Tr. 50–51, 76.)   The ALJ issued his decision on February 22, 2013.  (Tr. 31.)

The ALJ has a basic obligation to develop a full and fair record.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  However, a remand is not warranted unless "the record reveals evidentiary gaps which result in unfairness or clear prejudice."  *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995); *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985).  This requires a showing that the ALJ lacked all relevant evidence or that the ALJ did not consider all of the relevant evidence in the record in reaching a decision.  *Kelley*, 761 F.2d at 1540.

On December 4, 2012, Claimant sought medical treatment from Dr. Speros Hampilos for pain resulting from her right hip replacement.   (Tr. 399.)   During the appointment, Claimant reported that the pain started three days before and was getting worse.  (Tr. 399.)  A radiograph of Claimant's right hip taken the following day showed that there had been a prior open reduction and internal fixation ("ORIF") surgery of the right hip, the femoral head was well-sealed within the acetabulum, no displaced fracture, mild underlying osteopenia, no definite plain film evidence of loosening, and no acute abnormalities noted on the plain film exam.  (Tr. 401.)

On September 9, 2014, the Appeals Council denied Claimant's request for review of the ALJ's decision.  (Tr. 1–4.)  In the Notice of Appeals Council Action, the Appeals Council stated that "[it] considered the reasons [Claimant] disagree[d] with the [ALJ's] decision and the additional evidence listed on the enclosed Order of Appeals Council" but found that "this information does not provide a basis for changing the Administrative Law Judge's decision."  (Tr. 1–2.)  The Order of Appeals Council indicated that the Appeals Council received additional evidence that it made part of the record, which consisted of Claimant's representative brief and the

treatment notes from Dr. Hampilos dated October 4, 2012, through December 5, 2012.  (Tr. 5.)

The representative brief dated June 17, 2013, which the Appeals Council reviewed, describes the

significance of the records from Dr. Hampilos and includes Claimant's argument regarding such

records.  (Tr. 271–273.)

Although it is unclear why the ALJ did not leave the record open an additional fourteen

days as offered, the failure to do so does not warrant reversal in this case.  While Plaintiff argues

that the records are significant to bolster Claimant's testimony regarding her right hip pain, the

ALJ specifically questioned Claimant during the hearing about the x-rays as they related to her

lumbar spine, not her right hip.  (Tr. 50.)  Indeed, the ALJ asked Claimant if she had any problem

in her lower back and if she had any x-rays or MRI of the lower back.  (Tr. 50.)  Claimant

responded that she had an x-ray but that it only showed her hip replacement and did not show any

abnormality of the low back of the lumbar spine.  (Tr. 50.)  In his decision, the ALJ noted that

> [Claimant] . . . alleged lower back pain, but there is no record of treatment and no
> reference to back pain in the decision on her prior claim.  The claimant testified that
> she had a lumbar x-ray and that it was negative. There were no objective findings
> to support a lumbar spine impairment at her consultative examination, and the
> claimant's testimony regarding her back pain was that it was radiated pain from her
> hip and leg. Accordingly, the claimant's lower back pain is considered in the above
> residual functional capacity, but is a symptom rather than a medically determinable
> impairment.

(Tr. 25.)   Therefore, although the ALJ did not obtain the x-ray records, he had sufficient

information relating to Claimant's lower back pain to make an informed decision, especially given

that the x-ray was negative and showed no acute abnormalities.

Regarding Claimant's right hip pain, the x-ray records showed that Claimant previously

underwent a hip replacement but showed no displaced fracture, no evidence of loosening, no acute

abnormalities, and only mild underlying osteopenia.  (Tr. 401.)  In the ALJ's decision, he stated

The claimant's alleged right hip pain is the result of a hip replacement surgery in 1997. She testified that she recovered after the surgery, but that her hip is still painful. Her left leg pain is the result of a tibia-fibula fracture surgical repair in 2001. The claimant testified that she has a plate and screws in her hip, and a rod in her leg with screws in the knee and ankle. Although there are no treatment records in the current file, the prior record contains evidence of her prior treatment as detailed in the decision on her prior claim. She testified that she has pain every day from her waist down, and that it is a severity level of six on a scale of ten.

(Tr. 25.) Upon review of the ALJ's decision and the record as a whole, the Court finds that Plaintiff has not established that the record was insufficient because the ALJ did not review Claimant's x-ray, and there is nothing to suggest that there was a gap in the record or that the ALJ did not have all of the material evidence necessary to decide the case. *Brown*, 44 F.3d at 935; *see also* 42 U.S.C. § 423(d)(5)(B) (requiring the ALJ to consider all medical evidence necessary to reach a decision). The administrative record sufficiently accounts for Claimant's impairments, and the ALJ's decision reflects that the ALJ considered Claimant's lower back pain and right hip pain. Specifically, the assessment by Dr. Robert Shefsky dated March 15, 2011, indicates that Claimant was in no acute distress, had a normal gait, could not walk on heels and toes without difficulty, could not do a full squat, had a normal stance, used no assistive devices, and needed no help changing for the exam or getting on and off the exam table. (Tr. 348.) It also showed that Claimant's lumbar spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. (Tr. 349.) When examining Claimant pursuant to her complaints of low back pain, leg pain, and hip pain, Dr. Shefsky found that Claimant was stable, finding full range of motion of hips, knees, and ankles bilaterally; stable and non-tender joints; no evident subluxations, contractures, ankyloses, or thickening; and no redness, heat, swelling, or effusion. (Tr. 347, 349.) The ALJ noted these findings in his decision and also found that "there is no record of other medical evaluation or treatment for the claimant's physical impairments." (Tr. 26.) Notably, the ALJ found that Claimant was able to perform activities of daily living without

significant impairment, did not have a primary care physician, had not seen any specialists, took no prescription medication for pain, and was able to work full time after her hip replacement and leg fracture by alternating between sitting and standing. (Tr. 26.)

In light of the above, the Court finds that the ALJ did not err in his consideration of Claimant's medical records or Claimant's pain. Indeed, the record reflects that the ALJ addressed Claimant's pain and her subjective complaints and limited her RFC accordingly. As discussed below, the ALJ properly applied the pain standard in this case and was entitled to discredit Claimant's subjective complains of pain based on inconsistencies in the record and the limitations included in the RFC. *See* discussion *infra* Section III.G. Further, Plaintiff has not explained how the absence of the x-ray records precluded the ALJ from making an informed decision or how the records would have changed the outcome in this case, as the x-ray records do not contradict the ALJ's decision or the medical evidence. *Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991). From the record, the ALJ had all the relevant evidence before him such that there were no evidentiary gaps when he made his decision. As the ALJ's decision was based on substantial evidence and employed proper legal standards, the undersigned recommends affirmance.

## 2. Appeals Council's Failure to Review Additional Evidence

Plaintiff further argues that the Appeals Council erred by failing to review the records from Claimant's x-ray. If a claimant presents evidence after the ALJ's decision, the Appeals Council must consider it if it is new, material, and chronologically relevant. *Beavers v. Soc. Sec. Admin., Comm'r*, 601 F. App'x 818, 821 (11th Cir. 2015) (citing 20 C.F.R. § 404.970(b)). New evidence must not be cumulative of other evidence in the record. *See Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986). The Appeals Council must grant the petition for review if it finds that the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record."

*Ingram v. Comm'r Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007). Chronologically relevant evidence is evidence that relates to the period on or before the date of the ALJ's hearing decision. *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 745 (11th Cir. 2011). The new evidence is material, and thus warrants a remand, if "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).

When denying a petition for review, the Appeals Council is not required to provide a detailed explanation of a claimant's new evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 783–85 (11th Cir. 2014). Rather, in denying review, it is sufficient for the Appeals Council to simply state that it considered the additional evidence but that the information did not provide a basis for changing the ALJ's decision. *Id.* at 782. This explanation is sufficient when the record does not provide a "basis for doubting the Appeals Council's statement that it considered [the claimant's] additional evidence." *Id.* at 783–84. As such, on appeal, a reviewing court must consider whether the new evidence renders the denial of benefits erroneous. *Ingram*, 496 F.3d at 1262. In other words, to obtain a remand from a federal district court under sentence four of 42 U.S.C. § 405(g), "[a] claimant must show that, in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole." *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 902 (11th Cir. 2013).

In this instance, the Appeals Council denied Claimant's petition for review, stating that it had considered Claimant's reasons for disagreeing with the ALJ's decision and her new evidence but that the new evidence did not provide a basis for changing the ALJ's decision. (Tr. 1–2.) The Appeals Council's statement is sufficient, as no further explanation is required. *Beavers*, 601 F. App'x at 822; *Mitchell*, 771 F.3d at 783. Upon review of the x-ray and treatment notes, the Court finds that this evidence would not render the denial of benefits erroneous or present a reasonable

possibility that the administrative outcome would change and is therefore not material.  *See Ingram*, 496 F.3d at 1262 (noting that review by a federal district court requires consideration of evidence not initially submitted to the administrative law judge but considered by the Appeals Council in order to determine whether that new evidence renders the denial of benefits erroneous); *Caulder*, 791 F.2d at 877 (stating that "[t]o be material, the evidence must be relevant and probative so that there is a reasonable possibility that it would change the administrative outcome") (citation omitted).

When the x-ray is viewed in conjunction with the other evidence in the record, including evidence regarding Claimant's lower back pain and right hip pain, the decision to deny benefits remains supported by substantial evidence.  Indeed, review of the x-ray demonstrates simply that Claimant's complaints of hip and back pain continued but did not rise to the level of disabling, nor does it alter any of the ALJ's findings, conflict with the evidence of record, or change the outcome that the Claimant can perform past relevant work.  Specifically, as stated above, the x-ray showed that Claimant underwent hip replacement surgery in the past, but it showed no evidence of worsening or abnormality.  Further, the treatment notes from Dr. Hampilos do not indicate any additional limitations as it relates to Claimant's ability to perform daily activities or any proposed surgery or remedial action.  Therefore, while the newly submitted evidence relates back to the relevant period of disability, it could not have reasonably been expected to change the administrative result.  Accordingly, the Court finds no error in the ALJ's failure to review the newly submitted evidence or the Appeals Council's decision not to review the ALJ's decision based on the newly submitted evidence.

## B.   Consideration of Impairments

Plaintiff next argues that the ALJ erred by failing to consider all of Claimant's impairments at step two of the sequential evaluation process.   Plaintiff does not challenge the procedural analysis undertaken by the ALJ, conceding that the ALJ properly noted a number of Claimant's severe impairments.   Rather, Plaintiff takes issue with the extent to which the ALJ described the severity of Claimant's impairments.   For example, Plaintiff argues that the ALJ listed very remote right hip repair in 1997 as a severe impairment but did not sufficiently describe the severity of the procedure itself.   Similarly, Plaintiff argues that the ALJ mentioned Claimant's left tibia/fibula fracture but did not adequately address Claimant's continuing pain caused by the condition. Plaintiff further argues that the ALJ failed to consider Claimant's inability to stoop as an additional severe impairment and that the ALJ mischaracterized certain evidence.

### 1.   Evaluation of Impairments at Step Two

At step two of the evaluation process, the ALJ must consider the medical severity of the claimant's impairments and must determine whether the impairments, alone or in combination, significantly limit the claimant's physical or mental ability to do basic work skills.   *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing C.F.R. § 404.1520(c)); 20 C.F.R. § 404.1520(a)(4)(ii).   When a claimant alleges a multitude of impairments, "a claim for social security benefits may lie even though none of the impairments, considered individually, is disabling." *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (citation and quotation omitted). Consequently, the ALJ has a duty to "make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." *Id.*   A clear statement that the ALJ considered the combination of

impairments is adequate to meet this standard.  *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902–03 (11th Cir. 2011).

Here, at step two, the ALJ found that Claimant had the following severe impairments: status post very remote right hip repair in 1997; status post remote left tibia/fibula fracture in 2001; and bipolar disorder with depression and anxiety/panic disorder with drug and alcohol abuse.  (Tr. 22.)  Thus, the ALJ found in Claimant's favor at step two and proceeded with the other steps of the sequential evaluation process, where he considered Claimant's complaints of pain and other impairments, including Claimant's mental impairments and physical impairments.  (Tr. 24.)  The ALJ then found that Claimant did not have an "impairment or combination of impairments" that met or medically equaled a listed impairment.  (Tr. 23.)  This is sufficient to show that the ALJ considered the combined effect of Claimant's impairments.  *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991).  Therefore, the threshold inquiry at step two was satisfied.  *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two").  Although Plaintiff contends that the ALJ should have found that she had other severe impairments, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," provided the ALJ considers the claimant's impairments in combination.  *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).

In regard to Plaintiff's contention that the ALJ erred by failing to find that Claimant's inability to stoop was an additional severe impairment, the record does not contain any finding regarding Claimant's ability or inability to stoop aside from Claimant's testimony that she tries to

avoid bending or stooping.  (Tr. 101.)  Further, the record does not contain any postural limitations as to Claimant.  There is no basis for finding an additional impairment of an inability to stoop.  Nonetheless, the ALJ accounted for Claimant's statements by limiting her RFC to only occasional stooping and thoroughly discussed Claimant's records relating to her hip pain and low back pain to which such an impairment would be attributed.  (Tr. 24–26.)  Accordingly, the ALJ properly evaluated Claimant's impairments, and any error in failing to find that Claimant suffers from the additional severe impairment of an inability to stoop is harmless.  *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013).

## 2.  Mischaracterization of Evidence

Plaintiff also argues that the ALJ mischaracterized Claimant's bipolar I diagnosis.  Specifically, Plaintiff argues that the ALJ ignored the significant distinction between bipolar disorder and bipolar I disorder when evaluating Claimant's impairments.  Contrary to Plaintiff's assertions, the ALJ's decision specifically refers to Claimant's bipolar I diagnosis, which he described as "most recent episode mixed, severe with psychotic features, panic disorder without agoraphobia, and borderline personality traits."  (Tr. 27.)  The ALJ also referenced Claimant's treatments records relating to her mental health, which included Claimant's reports of hallucinations, depression, mood swings, and panic attacks.  (Tr. 27.)  However, the ALJ noted Claimant's repeated failure to show up for appointments, seek medical treatment when instructed, and comply with treatment and medications.  (Tr. 27–28.)  The ALJ further found that Claimant's statements regarding the severity of her condition were undermined by her own testimony that she is able to take public transportation, complete daily activities such as shopping and attending church, and socialize with others, as well as Claimant's history of substance abuse.  (Tr. 28.)  Plaintiff's contention that the ALJ mischaracterized evidence is without merit, as the ALJ's

decision is supported by substantial evidence and evidences a proper discussion of Claimant's mental health issues, including the symptoms associated with Claimant's bipolar disorder. Notably, the record contains no objective medical findings to support Claimant's allegations relating to her reported symptoms aside from a diagnosis of bipolar disorder and depression and no limitations imposed on Claimant resulting from this disorder.

Similarly, Plaintiff's argument that the ALJ mischaracterized Claimant's drug and alcohol abuse is without merit.  Plaintiff argues that Claimant's diagnosis was cocaine and cannabis dependence, both in remission, and that the ALJ's finding of drug and alcohol abuse as a severe impairment is a mischaracterization.  Notwithstanding Claimant's diagnosis of cocaine and cannabis dependence in 2012, the record includes evidence of alcohol abuse in partial remission (Tr. 285, 307–308, 309, 310, 312–313, 356), denial over her substance abuse, namely alcohol use (Tr. 378), and a history of heavy alcohol use (Tr. 287–288).  In light of this, the Court finds that the ALJ properly characterized Claimant's impairment as one of alcohol and drug abuse as the evidence shows a history of reports and treatment related to substance abuse of this nature.

Upon review of the ALJ's decision and the record evidence, the Court finds that the ALJ properly discussed Claimant's impairments, and substantial evidence support the ALJ's findings that these impairments did not have more than a minimal effect on Claimant's ability to perform work-related activities.  (Tr. 18.)  *See Keane v. Comm'r of Soc. Sec.*, 205 F. App'x 748, 752 (11th Cir. 2006) (finding that the ALJ properly considered all of plaintiff's impairments and was supported by substantial evidence); *Wood v. Astrue*, No. 8:10-CV-2373-T-17AEP, 2012 WL 834132, at *4 (M.D. Fla. Mar. 13, 2012) (finding that when the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does not constitute reversible error).  Importantly, while

- 15 -

Claimant may have suffered from these impairments, the record does not indicate any limitations placed on Claimant resulting from such impairments, and Plaintiff fails to specify any limitations attributable to these impairments in the record. 20 C.F.R. § 404.1520(c). Therefore, Plaintiff failed to establish that the ALJ inadequately considered Claimant's impairments at any stage in the sequential evaluation process.

### C.  Listing 12.04

Plaintiff argues that the ALJ erred by failing to find that Claimant met Listing 12.04. Listing 12.04 concerns affective disorders, which are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.04. The claimant has the burden of proving the existence of a listing-level impairment. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Mere diagnosis of a listed impairment is not sufficient. *Id.*; *Wilson*, 284 F.3d at 1224. To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. *Wilson*, 284 F.3d at 1224.

To meet the required level of severity for an affective disorder under Listing 12.04, a claimant must satisfy the requirements of both Section A and Section B, or the requirements of Section C. 20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.04. Section A requires medically documented persistence, either continuous or intermittent, of one of the following: (1) depressive syndrome; (2) manic syndrome; or (3) bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes. 20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.04(A). Depressive syndrome must be characterized by at least four of the following: (1) anhedonia or pervasive loss of interest in almost all activities; (2) appetite

disturbance with change in weight; (3) sleep disturbance; (4) psychomotor agitation or retardation; (5) decreased energy; (6) feelings of guilt or worthlessness; (7) difficulty concentrating or thinking; (8) thoughts of suicide; or (9) hallucinations, delusions, or paranoid thinking.  20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.04(A)(1).  Section B requires that the disorder result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.  20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.04(B).  A limitation is marked if it is more than moderate but less than extreme.  20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.00(C).

Alternatively, Section C requires medically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.  20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.04(C).

Here, the ALJ considered Claimant's mental impairment under Listing 12.04 and found that Claimant had no restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration.  (Tr. 23–24.)  The ALJ further found that there were no repeated episodes of decompensation of extended duration, no evidence of a residual

disease process that resulted in the requisite marginal adjustment inabilities, and no evidence of one or more years' inability to function outside a highly supportive living arrangement. (Tr. 24.) Based on this, the ALJ found that Claimant did not meet Listing 12.04.

Upon review of the record, the Court finds that the ALJ's findings are supported by substantial evidence. Specifically, Claimant's testimony reflects that she is able to perform daily activities such as perform household chores, travel to visit family and friends, prepare simple meals, walk her son to school, use public transportation, and go shopping for personal items and groceries. Claimant's medical records do not reflect an inability to perform activities of daily living. (Tr. 348.) In regard to social functioning, the record shows that despite Claimant's anxiety and depression, she is able to visit family and friends, socialize at church, spend time with others on a daily basis, attend courses to obtain her GED, and be around others to complete necessary tasks such as shopping and vising the grocery store. Additionally, despite Claimant's alleged difficulties with short-term memory and timely completing tasks, Claimant is able to follow instructions, delegate tasks to others, read, and attend and prepare for the GED examination. Lastly, the ALJ noted that Claimant has some short-term Baker Act hospitalizations associated with drug use and non-compliance with prescription medications, but this did not meet the requirement for episodes of decompensation of extended duration. Further, Dr. Keith Bauer, a state agency medical consultant, found that Claimant did not have marked limitations in understanding and memory, sustained concentration and persistence, social interaction, or adaptation. (Tr. 329–330.) Dr. Bauer also opined that Claimant did not have marked limitations in activities of daily living, maintaining social functioning, or difficulties maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration. (Tr. 343.)

In light of the above, the record reflects that Claimant suffered from bipolar disorder and depression, but she did not have marked limitations in at least two of the four requirements necessary to meet Listing 12.04 or meet the requirements of both Section A and B, and her subjective complaints alone do not establish medically documented persistence of the required symptoms.  As noted above, a diagnosis alone is insufficient to satisfy a listed impairment.  *Carnes*, 936 F.2d at 1218.  Upon review of the record, there is no medical evidence to support a finding that Listing 12.04 was met, as no medical evidence suggests that Claimant's disorder rose to a disabling level.

### D.  Residual Functional Capacity ("RFC")

Plaintiff argues that the ALJ erred by failing to properly formulate Claimant's RFC in that the ALJ failed to apply Social Security Regulation 96-8p.  However, Plaintiff's challenge on this basis is unclear, as there is no citation to the record or any governing authority and no clear statement as to how the ALJ failed to apply the regulation.

Social Security Regulation 96-8p is a social security policy regarding the assessment of the RFC.  The RFC is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)).  To comply with SSR 96-8p, the RFC assessment must first identify the claimant's functional limitations or restrictions and assess the claimant's work-related abilities on a function-by-function basis.  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.  SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996).

Here, Plaintiff fails to establish any failure in assessing Claimant's RFC.  In considering Claimant's impairments, the ALJ properly accounted for any limitations resulting from such

impairments in conjunction with Claimant's testimony regarding her limitations.  Specifically, the ALJ accounted for Claimant's alleged short-term memory and concentration difficulties by limiting Claimant's RFC to understanding, remembering, and carrying out simple, routine, and repetitive instructions and procedures, with the ability to adjust to simple changes in work setting, and to make basic decisions.  (Tr. 24.)  In response to Claimant's testimony and medical records indicating bipolar disorder and depression, the ALJ limited Claimant's RFC to frequent interaction with the public, occasional interaction with crowds, and no interaction with large crowds.  (Tr. 24.)  Finally, to account for Claimant's pain in her leg, hip, and lower back resulting from her prior procedures, the ALJ limited Claimant to occasional operation of foot controls bilaterally; limited concentrated exposure to vibrations affecting Claimant's lower extremities; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; and no climbing of ladders, ropes, or scaffolds or at unprotected heights.  (Tr. 24.)  As such, the ALJ found that Claimant maintained the RFC to perform light work with these additional limitations to account for each impairment.  This assessment is adequately supported by the record, as is the ALJ's conclusion that Claimant could perform sustained work, and the ALJ properly complied with SSR 96-8p by considering Claimant's functional limitations before expressing Claimant's RFC in terms of exertional levels.

### E.  Hypothetical Question

Plaintiff argues that the ALJ erred by posing an incomplete hypothetical question to the vocational expert because he failed to include Claimant's impairment in social functioning and in concentration, persistence, and pace.  Under step five of the sequential evaluation process, the ALJ must determine whether the claimant is able to perform other work that exists in the national economy.  20 C.F.R. § 404.1520(g).  At this step, the claimant has shown that she cannot perform

past relevant work, and the burden then temporarily shifts to the Commissioner to determine whether there is other work available in significant numbers in the national economy that the claimant can perform.  *Salazar v. Comm'r of Soc. Sec.*, 372 F. App'x 64, 68 (11th Cir. 2010).

If the ALJ finds that the claimant is able to perform other work, then the ALJ "must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture."  *Wilson*, 284 F.3d at 1227.  One way in which the ALJ may determine whether the claimant is able to perform other jobs is by posing a hypothetical question to a VE.  *Id.*  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  *Id.*  Nevertheless, the ALJ's hypothetical need not include a claimant's asserted impairments that are not supported by medical evidence, or that are controlled or alleviated by medication.  *Ingram*, 496 F.3d at 1270 (finding that "[t]he hypothetical need only include 'the claimant's impairments,' not each and every symptom of the claimant").

In this case, at step four of the sequential evaluation process, the ALJ consulted a vocational expert, Howard D. Steinberg, to determine whether Claimant was able to return to her past relevant work.  In the hypothetical, the ALJ included limitations to simple, routine, repetitive instructions and procedures with the ability to adjust to simple changes in a work setting and make basic decisions and a limitation to frequent interaction with the public but only occasional interaction with crowds and never with large crowds.  (Tr. 71.)  In assessing Claimant's limitations, the ALJ found that Claimant had moderate difficulties in social functioning, specifically referencing her alleged anxiety and her ability to spend time with others on a daily basis, socialize with others at church, and visit friends and family.  (Tr. 23.)  The ALJ also found that Claimant had moderate difficulties in maintaining concentration, persistence, or pace, specifically referencing her alleged

difficulties with short-term memory and ability to timely complete tasks and her ability to follow written instructions, delegate tasks to others, read, and pass her GED examination. (Tr. 23.) In light of this, the ALJ found that the record did not support Claimant's contention that her alleged impairments pose functional limitations, which is supported by the record evidence indicating moderate limitations in these domains. Further, the RFC properly accounts for Claimant's impairments in that her difficulties in social functioning resulted in limitations in interaction with the public, and her difficulties in concentration, persistence, or pace resulted in limitations to simple, repetitive, routine tasks and basic decision-making. The ALJ properly included Claimant's credible limitations in his hypothetical question to the VE and the hypothetical question was not incomplete. *See Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 625 (11th Cir. 2012) (finding that although the ALJ did not expressly include all of the plaintiff's conditions, the RFC adequately accounted for the limitations imposed by the plaintiff's condition); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (noting that "hypothetical questions adequately account for a claimant's limitations . . . when the questions otherwise implicitly account for [the] limitations"); *Lanier v. Comm'r of Soc. Sec.*, 252 F. App'x 311, 315 (11th Cir. 2007) (finding that plaintiff's "additional claimed impairments that were not supported by objective medical evidence did not need to be included in the hypothetical"). Accordingly, the Court finds that substantial evidence supported the ALJ's reliance on the response to the hypothetical in determining that Claimant was not disabled.

### F.  Weight of Medical Opinion

The Court first addresses Plaintiff's argument that the ALJ erred by failing to state the weight of Claimant's GAF scores. The Global Assessment of Functioning ("GAF") is a numeric scale that mental health physicians and doctors use to rate an individual's occupational,

psychological, and social functioning. *McCloud v. Barnhart*, 166 F. App'x 410, 413 n.2 (11th Cir. 2006) (citing Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision, 4th ed. 2000)). A GAF score between 41 and 50 indicates serious symptoms, such as suicidal ideation, serious impairment in social, occupational, or school functioning; a score between 51 and 60 reflects moderate symptoms, such as occasional panic attacks or moderate difficulty in social, occupational, or school functioning. *Id.* Here, Claimant's GAF scores ranged between 45 and 51 during treatment at Suncoast, with the exception of a score of 60 provided by Dr. Karl D. Jones in April 2010. (Tr. 27.) In his decision, the ALJ stated that he considered the GAF scores along with all the evidence but noted that the Commissioner has specifically declined to endorse the GAF scale for use in disability programs, finding that the GAF scale does not have a direct correlation to the severity requirements of the mental disorders listings. (Tr. 27.) *See* 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000); *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (applying the Commissioner's position on GAF scores). The ALJ is correct, and the Court finds that the ALJ properly considered Claimant's GAF scores and the evidence relating to Claimant's mental impairments, as evidenced by his thorough discussion of Claimant's mental health treatment and medical opinions in his decision. Further, the Court finds that the ALJ properly articulated his reason for discounting such scores, and there is no indication that the ALJ misinterpreted or failed to consider Claimant's GAF scores when considering the evidence as a whole. (Tr. 26–29.) *See Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 527 (11th Cir. 2015) (finding ALJ's failure to account for GAF scores was, at most, harmless error given the Commissioner's position on GAF scores and the ALJ's full consideration of the evidence regarding claimant's mental impairments).

## 1. Dr. Karl D. Jones, M.D.

Plaintiff argues that the ALJ erred by failing to state the weight given to the opinions of nurses from Suncoast Center for Community Mental Health.  Plaintiff further argues that the ALJ erred by giving little weight to the opinion of consultative psychologist Dr. Karl Jones.

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairments, including the claimant's symptoms, diagnosis, and prognosis, the claimant's ability to perform despite impairments, and the claimant's physical or mental restrictions.  *Winschel*, 631 F.3d at 1178–79 (internal quotation and citation omitted).  The medical opinions of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary.  *Id.* at 1179; *see also* 20 C.F.R. § 404.1527(c)(2) (affording more weight to the opinion of a treating physician).  Good cause exists when the doctor's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the doctor's opinion was conclusory or inconsistent with his or her own medical records.  *Winschel*, 631 F.3d at 1179.  In addition, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.  *Id.*  However, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his or her decision, so long as the decision is not "a broad rejection" that leaves the court with insufficient information to determine whether the ALJ considered the claimant's medical condition as a whole.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).  To the extent that an ALJ commits an error, the error is harmless if it did not affect the ALJ's ultimate determination.  *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983).

Here, the ALJ gave little weight to the opinion of Dr. Karl Jones, M.D., a psychiatrist who examined Claimant on April 1, 2010.  (Tr. 28.)  During this visit, Dr. Jones opined that Claimant

had moderate impairment of activities of daily living, marked impairment in social functioning, and marked impairment in concentration, persistence, and pace. He further opined that the claimant was totally disabled. (Tr. 28.) In evaluating this opinion, the ALJ stated:

> [Dr. Jones'] finding of marked impairments is not consistent with his assessment of a GAF score of 60, which is at the higher level of the range for moderate symptoms or functional limitations, only one point below the range for some mild symptoms or difficulties in functioning. Nor is it consistent with the other evidence of record showing intact memory and cognitive functioning. Moreover, it was based on a single evaluation of the claimant at a time that she was admittedly not taking her medications and alleged that her concentration drops when she is off her medications.

(Tr. 28.)

Upon review of the record, the Court finds that substantial evidence supports the ALJ's decision to afford little weight to Dr. Jones' opinion. First, a doctor's opinion that a claimant is unable to work is not a "medical opinion," but an opinion on an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). The ALJ properly discredited this portion of the opinion. In discounting the remainder of Dr. Jones' opinion, the ALJ found that it was inconsistent with the evidence of record. As discussed above, the record does not support a finding that Claimant suffered marked impairment in social functioning or in concentration, persistence, or pace. Specifically, although Claimant testified that she had difficulty concentrating and being around people, she also testified that she socializes with others, is able to take public transportation, attend GED courses, read, help her son with school work, and follow instructions. (Tr. 28.) In his decision, the ALJ noted that Claimant's concentration difficulties can be attributed to her non-compliance with medications. (Tr. 28.) Claimant's other records also indicate that she was alert, oriented, and had intact memory and cognitive functioning. (Tr. 287, 313, 323, 329, 349, 365.) In sum, the medical records and testimony from Claimant support the ALJ's finding that Claimant has moderate difficulties in social functioning and in concentration, persistence, or pace. Lastly,

the ALJ properly discounted Dr. Jones' opinion because it was based on a single examination—an examination during which Claimant had not taken her medications—and included findings that were inconsistent with the GAF score of 60 he provided during the examination, which indicates moderate symptoms.  (Tr. 27–28.)  Therefore, the ALJ's decision to afford little weight to Dr. Jones' opinion is supported by the record.

Additionally, Plaintiff vaguely argues that the ALJ erred by giving great weight to the opinions of the state agency medical consultants.  However, the ALJ properly afforded great weight to such opinions because the opinions were consistent with the evidence.  Specifically, Dr. Keith Bauer's opinion that Claimant would work best in an environment with limited contact with the public and reduced interpersonal demands is consistent with Claimant's testimony regarding her difficulty with sustained social interaction and her reported panic attacks.  (Tr. 28–29.) Similarly, his opinion that Claimant is able to execute simple to moderately complex tasks and persist at simple and routine tasks is consistent with the evidence of record indicating moderate symptoms and Claimant's testimony regarding her difficulty with concentration and short-term memory. (Tr. 29.)  Importantly, the state agency medical opinions of Dr. Edmund Molis and Dr. Jill Rowan, both of which affirmed Claimant's RFC, are consistent with the RFC and the absence of any functional limitations in the record.

In determining the weight due to a non-examining physician's opinion, the ALJ considers factors such as the examining or treating relationship, whether the opinion is well-supported, whether the opinion is consistent with the record, and the physician's specialization.  *Luterman v. Comm'r of Soc. Sec.*, 518 F. App'x 683, 689 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).  Generally, the opinions of a non-treating or non-examining physician are given less weight than those of examining or treating physicians and, standing alone, do not constitute

substantial evidence. *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009).  An ALJ may nevertheless give great weight to the opinion of a consulting physician when it is consistent with the record as a whole and supported by clinical findings.  *Id.*; *see also Edwards*, 937 F.2d at 584–85 (finding that the ALJ did not err by relying on a non-examining physician's report when the non-examining physician's report did not contradict the findings of the examining physicians).  Further, state agency medical consultants are considered experts in the Social Security disability evaluation process, and their opinions are entitled to great weight if supported by and consistent with the evidence of record.  20 C.F.R. § 416.927(e)(2)(i); *Stone v. Comm'r of Soc. Sec.*, 586 F. App'x 505, 513 (11th Cir. 2014).  Although the state agency medical opinions regarding Claimant's moderate limitations in social functioning and in concentration, persistence, or pace contradict Dr. Jones' opinion finding marked limitations in those domains, as stated above, the ALJ was entitled to discount Dr. Jones' opinion as it was inconsistent with the evidence as a whole.

### 2.  Nurses

Plaintiff also argues that the ALJ erred by failing to state the weight given to the opinions of nurses from Suncoast Center for Community Health.  However, Plaintiff does not specify which opinions were not weighed and does not assert that the ALJ improperly discounted such opinions or that the opinions contradict the ALJ's findings or impact the ALJ's ultimate decision.  Notably, Plaintiff fails to cite to any records to support this contention.

Here, the ALJ properly considered the opinions from Suncoast.  Indeed, the ALJ summarized and credited the records from Suncoast in evaluating Claimant's mental health treatment.  (Tr. 26–28.)  However, nurse practitioners are not acceptable medical sources.  20 C.F.R. § 404.1513(a).  Thus, evidence from nurse practitioners cannot establish the existence of an impairment, and their opinions are not entitled to any special consideration.  *Freeman v.*

*Barnhart*, 220 F. App'x 957, 961 (11th Cir. 2007).  While the Social Security Administration has acknowledged that opinions from other medical sources are "important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file," an ALJ is not required to accept the opinion of an individual who is not listed as an acceptable source of medical evidence.  *Berry v. Astrue*, No. 5:09–cv–328–Oc–GRJ, 2010 WL 3701392, at *8 (M.D. Fla. Sept.15, 2010) (footnote omitted).  The Commissioner evaluates opinions from other sources, however, "to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work."  20 C.F.R. § 404.1513(d).  Here, the ALJ properly considered the opinions of the nurses from Suncoast, but he was not required to afford significant weight or deference to such opinions.  *See Orand v. Comm'r of Soc. Sec.*, No. 6:14-CV-523-ORL-41, 2015 WL 5307797, at *5 (M.D. Fla. Sept. 10, 2015) (finding that because the "opinion . . . at issue was offered by a registered nurse, who is not an acceptable medical sources under the regulations, the opinion is not medical opinion and the ALJ was not required to state with particularity the weight given to it and the reasons therefor").

### G.  Pain Standard

Plaintiff argues that the ALJ erred by discrediting Claimant's credibility under the pain standard.  In cases where a claimant attempts to establish disability through his or her own testimony concerning pain or other subjective symptoms, the court applies a three-part pain standard under which the claimant must show: (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain or (3) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  If the ALJ discredits subjective testimony, then the ALJ must articulate explicit and adequate reasons for doing so.  *Hale v. Bowen*,

831 F.2d 1007, 1011 (11th Cir. 1987).  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.  *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).  In evaluating a claimant's credibility, the ALJ considers, among other things, the objective medical evidence and the claimant's statements regarding his or her symptoms, such as the claimant's daily activities, the status of the pain or symptoms, and the effect of medication on the pain or symptoms.  20 C.F.R. § 404.1529(c)(3).

In applying this standard, the ALJ found that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but then found that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" to the extent they were not supported by objective medical evidence. (Tr. 25–29.)  In discrediting Claimant's subjective complaints, the ALJ repeatedly noted the absence of objective medical evidence in the record to support Claimant's complaints. Specifically, the ALJ considered Claimant's right hip pain and lower back pain and found that no objective findings existed to support her complaints of pain, as the medical records indicated benign findings and no indication of worsening or abnormalities.  (Tr. 25–29.)  The ALJ also found that, despite Claimant's complaints, she testified that she was able to walk her son to school, walk to the park, take the bus to attend appointments and take shopping trips, visit family and friends on road trips, and socialize with others.  (Tr. 26–29.)  In regard to Claimant's complaints of migraines and wrist pain, the ALJ found no medical evidence of a diagnosis of migraines and no evidence of a medical evaluation or diagnosis relating to wrist pain.  (Tr. 26.)  Further, when considering Claimant's mental impairments, the ALJ found that Claimant was diagnosed with bipolar disorder and noted Claimant's history of mental health treatment and reports of mood swings and panic attacks.  (Tr. 27–28.)  However, the ALJ found that Claimant's complaints were

undermined by her testimony regarding her ability to perform daily activities, the medical records indicating a failure to comply with medications and follow medical directives, and the absence of any functional limitations imposed on Claimant resulting from her impairments.  The ALJ properly considered Claimant's testimony regarding her symptoms and impairments and properly discounted such complaints because they were inconsistent with the record evidence and Claimant's own testimony.

**CONCLUSION**

Accordingly, after due consideration and for the foregoing reasons, it is

**RECOMMENDED**:

1.  The decision of the Commissioner be **AFFIRMED**.

2.  The Clerk of Court be directed to enter final judgment in favor of the Commissioner and close the case.

**IT IS SO REPORTED** in Tampa, Florida, on January 6, 2016.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable James S. Moody, Jr
Counsel of Record